# Exhibit 1

David A. Mazie, Esq.  (Attorney ID:  017941986)
Adam M. Epstein, Esq. (Attorney ID:  027482010)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
T: (973) 228-9898
F: (973) 228-0303
*Attorneys for Plaintiff*

| | |
|---|---|
| LATIFAH DAVIS, Individually and as General Administratrix and Administratrix ad Prosequendum of the Estate of L.J., <br><br> Plaintiff, <br><br> vs. <br><br> BLAIR A. BERGEN, M.D.; NICOLE M. SIEMS, D.O.; ATLANTICARE REGIONAL MEDICAL CENTER, a/k/a ARMC Mainland Campus; JOHN DOES 1-10 (FICTICIOUS PARTIES); ABC CORPS. 1-10 (FICTICIOUS PARTIES), <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION, ATLANTIC COUNTY <br><br> Docket No. ATL-L- <br><br><br> Civil Action <br><br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, individually and as Administrator of the Estate of L.J., by way of Complaint against defendants, says as follows:

## **INTRODUCTION**

1.      This action is about healthcare providers putting their profits and expediency ahead of patient safety and self-determination.  Latifah Davis objected to the off-label use of an ulcer medication, Cytotec, to induce her labor.  The drug's manufacturer and FDA have warned that Cytotec has not been studied or approved for inducing labor.  But defendants ignored their patient's rights – using deceit to coerce an African-American

woman to undertake a course of treatment that she had objected to.  Perhaps if Ms. Davis had higher-paying private health insurance, instead of Medicaid, her wishes would have been honored.  The results were tragic:  her son, baby L.J., did not survive the birth, and her uterus ruptured.  She lost her child after a full-term pregnancy and will never be able to have children again.

**PARTIES**

2.     At all times relevant, plaintiff Latifah Davis ("Ms. Davis") resided at 400 North Indiana Avenue in Atlantic City, New Jersey, and was the mother of plaintiff L.J.

3.     At all times relevant herein, defendant Blair A. Bergen, M.D. ("Dr. Bergen") was a physician duly licensed to practice medicine in the State of New Jersey, holding himself out as a specialist in Obstetrics and Gynecology.

4.     At all times relevant herein, defendant Nicole M. Siems, D.O. ("Dr. Siems") was a physician duly licensed to practice medicine in the State of New Jersey, holding herself out as a specialist in Obstetrics and Gynecology.

5.     At all times relevant herein, defendant AtlantiCare Regional Medical Center, Mainland Campus, also known as ARMC Mainland, ("AtlantiCare" or "Hospital") was a teaching hospital providing patients with a wide range of medical services, including but not limited to, birth and delivery.  In 2015, AtlantiCare merged with and was owned by Geisinger, a hospital system based in Pennsylvania.  AtlantiCare's principal place of business is located at 65 Jimmie Leeds Road in Pomona, New Jersey.

6.     At all times relevant herein defendant, John Does 1-10 were doctors, nurses, assistants and/or other medical professionals on the dates at issue involved in the treatment and care of Plaintiff.

7.    At all times relevant herein defendants, ABC Corps. 1-10 were entities which employed or were affiliated with any defendant in this matter.

## FACTUAL ALLEGATIONS

8.    On February 16, 2020, Ms. Davis was admitted to AtlantiCare for delivery of her baby.

9.    Dr. Bergen, Dr. Siems, and John Does 1-10, including employees or agents of AtlantiCare, discussed with Ms. Davis a plan for inducing her labor that included the use of Cytotec (a/k/a Misoprostol).

10.    Initially, Ms. Davis specifically requested that Cytotec not be used to induce labor and birth of her son, plaintiff L.J., as beforehand she had heard that there are potential risks associated with using that drug to induce labor.

11.    In response, defendants urged and assured Ms. Davis that Cytotec was completely safe for inducing her labor.  What is more, defendants coerced Ms. Davis to acquiesce to Cytotec because, they claimed,  there were no other drugs or other alternatives available to her.

12.    At no time did Dr. Bergen, Dr. Siems, or any other doctor, nurse, midwife or staff member of AtlantiCare adequately advise and disclose to Ms. Davis of true risks, warnings and counterindications associated with the use of Cytotec to induce labor, including for example and without limitations, using Cytotec to induce labor is an **off-label use** of that drug.

13.    Cytotec is a prophylaxis that the FDA approved for use to prevent ulcers.

14.    Significantly, the manufacturer of Cytotec sent letters to healthcare providers in August 2002 stating that it did **not study or support** the off-label use of Cytotec for

induction of labor, warning healthcare professionals that the manufacturer's indicated

dangers of maternal or fetal death, uterine hyperstimulation, amniotic fluid embolism, severe

vaginal bleeding, retained placenta, shock, fetal bradycardia, and severe pelvic pain.

15.     Neither Dr. Bergen, Dr. Siems, nor any other doctor, nurse, midwife or staff

member of AtlantiCare adequately advised and disclosed to Ms. Davis that the manufacturer

had never studied or recommended that Cytotec be used for inducing labor, or the adverse

outcomes associated with this off-label use of Cytotec.

16.     Additionally, neither Dr. Bergen, Dr. Siems, nor any other doctor, nurse,

midwife or staff member of AtlantiCare adequately advised and disclosed to Ms. Davis the

true risks, warnings, and counterindications, including those contained in the labeling for

Cytotec, which provides for examples the following:

**Cytotec®**
**misoprostol tablets**

**WARNINGS**

CYTOTEC (MISOPROSTOL) ADMINISTRATION TO WOMEN WHO ARE PREGNANT CAN CAUSE BIRTH DEFECTS, ABORTION, PREMATURE BIRTH OR UTERINE RUPTURE.

UTERINE RUPTURE HAS BEEN REPORTED WHEN CYTOTEC WAS ADMINISTERED IN PREGNANT WOMEN TO INDUCE LABOR OR TO INDUCE ABORTION. THE RISK OF UTERINE RUPTURE INCREASES WITH ADVANCING GESTATIONAL AGES AND WITH PRIOR UTERINE SURGERY, INCLUDING CESAREAN DELIVERY (see also **PRECAUTIONS** and **LABOR AND DELIVERY**).

\* \* \*

Nonteratogenic effects: See boxed **WARNINGS**. Cytotec may endanger pregnancy (may cause abortion) and thereby cause harm to the fetus when administered to a pregnant woman. Cytotec may produce uterine contractions, uterine bleeding, and expulsion of the products of conception. Abortions caused by Cytotec may be incomplete. If a woman is or becomes pregnant while taking this drug to reduce the risk

\* \* \*

**Labor and delivery:** Cytotec can induce or augment uterine contractions. Vaginal administration of Cytotec, outside of its approved indication, has been used as a cervical ripening agent, for the induction of labor and for treatment of serious postpartum hemorrhage in the presence of uterine atony. A major adverse effect of the obstetrical use of Cytotec is uterine tachysystole which may progress to uterine tetany with marked impairment of uteroplacental blood flow, uterine rupture (requiring surgical repair, hysterectomy, and/or salpingo-oophorectomy), or amniotic fluid embolism and lead to adverse fetal heart changes. Uterine activity and fetal status should be monitored by trained obstetrical personnel in a hospital setting.

The risk of uterine rupture associated with misoprostol use in pregnancy increases with advancing gestational ages and prior uterine surgery, including Cesarean delivery. Grand multiparity also appears to be a risk factor for uterine rupture.

The use of Cytotec outside of its approved indication may also be associated with meconium passage, meconium staining of amniotic fluid, and Cesarean delivery. Maternal shock, maternal death, fetal bradycardia, and fetal death have also been reported with the use of misoprostol.

Cytotec should not be used in the third trimester in women with a history of Cesarean section or major uterine surgery because of an increased risk of uterine rupture. Cytotec should not be used in cases where uterotonic drugs are generally contraindicated or where

\* \* \*

The effect of Cytotec on later growth, development, and functional maturation of the child when Cytotec is used for cervical ripening or induction of labor has not been established. Information on Cytotec's effect on the need for forceps delivery or other intervention is unknown.

    17.     In addition to the labeling included with Cytotec, in 2015 the FDA issued an

alert warning regarding using Misoprostol (marketed as Cytotec) for labor induction:

        **FDA ALERT – Risks of Use in Labor and Delivery.**

        This Patient Information Sheet is for pregnant women who may receive misoprostol to soften their cervix or induce contractions to begin labor. Misoprostol is sometimes used to decrease blood loss after delivery of a baby. These uses are not approved by the FDA. No company has sent the FDA scientific proof that misoprostol is safe and effective for these uses.

        There can be serious side effects, including a torn uterus (womb), when misoprostol is used for labor and delivery. A torn uterus may result in severe bleeding, having the uterus removed (hysterectomy), and death of the mother or baby. These side effects are more likely in women who have had previous uterine surgery, a previous Cesarean delivery (C-section), or several previous births.

Here, the risks foretold by the FDA occurred: Ms. Davis' uterus ruptured and had to be

removed (losing the ability for future childbirth), severe bleeding, and baby L.J.'s death.

18.     On February 16, 2020 at approximately 7:15 a.m., 50 mcg of Cytotec was placed vaginally in Ms. Davis at the direction and/or instruction of Dr. Bergen, Dr. Siems, and/or John Does 1-10 (including employees or agents of AtlantiCare).

19.     At approximately 9:15 a.m., Dr. Bergen was called by a nurse to inform him of fetal bradycardia[1] in Ms. Davis' baby, plaintiff L.J., after Ms. Davis sustained a ruptured membrane with thin meconium fluid.

20.     Thereafter, an emergency Cesarean section was called for due to fetal distress and vaginal bleeding, as well as a possible placenta abruption.

21.     The emergency Cesarean section and a hysterectomy were performed at approximately 9:31 a.m.

22.     Tragically, upon delivery it was apparent that plaintiff L.J. had suffered significant damages.  L.J.'s Apgar score at one minute was 0, at five minutes was 0, at ten minutes was 1, and at twenty minutes was 2.

23.     Plaintiff L.J. died at approximately 6:20 p.m. on February 16, 2020.

## JURISDICTIONAL ALLEGATIONS

24.     This action is properly filed in New Jersey state court, as it addresses the acts and/or omissions of defendants on February 16, 2020 at AtlantiCare Regional Medical Center, Main Campus.

25.     This action does not involve or relate to any acts and/or omissions that occurred at a Federally Qualified Healthcare Center ("FQHC").

26.     To the extent that Dr. Bergen and Dr. Siems claim they are employees of a FQHC, the Federal Tort Claims Act ("FTCA") and Federally Supported Health Centers

---

[1]     A fetal baseline heart rate less than 120 beats per minute.

Assistance Act of 1992 ("FSHCAA") do not apply to the claims in this action because, without limitation,

    a.   physicians are independent contractors that make independent treatment decisions, and so are beyond the scope of the FTCA[2];

    b.   there is no documented contractual relationship between defendant(s) and a FQHC, upon information and belief;

    c.   the unlawful acts and omissions at issue in this action took place at a non-FQHC, namely defendant AtlantiCare Regional Medical Center, Mainland Campus, and so were not within the scope of Dr. Bergen or Dr. Siems separate job description or duties at an independent FQHC, if any; and/or,

    d.   this action also involves non-malpractice causes of action that are beyond the scope of the FTCA and FSHCAA, *e.g.*, battery.

27.    To extent applicable, plaintiffs exhausted all administrative remedies for the claims at issue, and/or those proceedings are futile. R. 4:5-8(b); *accord* Fed. R. Civ. P. 9(c); *Am. Chiro. Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173–74, n.5 (3d Cir. 2015) (at pleading stage, error to shift affirmative defense of exhaustion to a plaintiff).

## **FIRST COUNT**

**(Plaintiff L.J.'s Claims for Negligence/Malpractice, under the N.J. Wrongful Death Act, and under the N.J. Survivor Act)**

28.    Plaintiff repeats and realleges herein all allegations set forth in this complaint.

---

[2]    See CRS, Federal Tort Claims Act (FTCA): A Legal Overview, at 10 (11/20/2019) ("courts have generally held that because physicians who provide medical services at facilities operated by the United States often operate relatively independently of the federal government's control, such physicians ordinarily qualify as 'independent contractors, and not employees of the government for FTCA purposes'") (citing Robb v. U.S., 80 F.3d 884, 890 (4th Cir. 1996)) (collecting cases); *accord* Creel v. U.S., 598 F.3d 210, 211–15 (5th Cir. 2010) (holding, because individual physician at federal medical center was an independent contractor rather than an employee of federal government, plaintiff's medical malpractice claim against that surgeon could proceed); Woodruff v. Covington, 389 F.3d 1117, 1125 (10th Cir. 2004) (affirming denial of individual defendants' motion to dismiss the plaintiff's tort claims against them and to substitute the United States as the defendant on the ground that the individual defendants were "not 'federal employees'").

29.     Defendants Dr. Bergen, Dr. Siems and/or John Does 1-10 (including employees or agents of AtlantiCare) owed duties of care to plaintiff L.J.

30.     Defendants Dr. Bergen, Dr. Siems and John Does 1-10 (including employees or agents of AtlantiCare) were negligent and failed to exercise the degree of care commonly exercised by other medical and/or healthcare professionals in like cases having due regard to the existing state of knowledge of medicine.

31.     Defendants Dr. Bergen, Dr. Siems and/or John Does 1-10 (including employees or agents of AtlantiCare) were negligent for, *inter alia*:

    a.   improperly using Cytotec to induce labor;

    b.   negligent risk/benefit assessment of using Cytotec under these circumstances;

    c.   failing to advise or improperly advising plaintiff that it was appropriate to use Cytotec to induce her labor, and/or refusing to offer alternative treatment options; and/or

    d.   failing to properly monitor L.J.'s vital signs.

32.     As a direct and proximate result of defendants' negligence and malpractice, L.J. experienced great pain, suffering and permanent injury, ultimately resulting in his premature and untimely death.

33.     Plaintiff seeks recovery against Defendants Dr. Bergen, Dr. Siems, AtlantiCare, and John Does 1-10 of all damages permitted at common law, the New Jersey Wrongful Death Act, and the New Jersey Survivor Act, including but not limited to all physical and emotional injuries suffered by plaintiff L.J. prior to his death.

WHEREFORE, plaintiff Latifah Davis as Administatrix of the Estate of L.J. demands judgment against defendants for compensatory and punitive damages, attorney's fees, interest, costs of suit and for such other relief as the Court deems equitable and just.

## SECOND COUNT

### (Plaintiff Latifah Davis' Claims for
### Negligent Infliction of Emotional Distress)

34.     Plaintiff Latifah Davis repeats and realleges herein all allegations set forth in this complaint.

35.     Plaintiff Latifah Davis was present and witnessed the malpractice of Dr. Bergen, Dr. Siems, AtlantiCare and/or John Does 1-10, and its resulting injury to her and to her baby L.J.

36.     Initially, Ms. Davis specifically requested that Cytotec not be used to induce labor and birth of her son, plaintiff L.J., as beforehand she had heard that there are potential risks associated with using that drug during birth.

37.     In response, defendants urged and assured Ms. Davis that Cytotec was completely safe for inducing her labor.  What is more, defendants coerced Ms. Davis to acquiesce to Cytotec because, they claimed, there were no other drugs or other alternatives available to her.

38.     The negligence of defendant(s) caused serious bodily harm to plaintiffs. After being prescribed the Cytotec, Ms. Davis' uterus ruptured and her baby, plaintiff L.J., went into fetal bradycardia, at which point Ms. Davis realized that her initial concerns were warranted, and that she had been deceived by defendants into believing that Cytotec was safe.

39.     Davis was aware that the treatment provided to her baby L.J. and herself fell below the acceptable standards of cares a result of witnessing and experiencing this malpractice, Ms. Davis has suffered severe and permanent emotional and/or mental distress and injuries.

WHEREFORE, plaintiff Latifah Davis demands judgment against defendants for compensatory and punitive damages, interest, attorney's fees, costs and such other relief as the Court seems equitable and just.

### THIRD COUNT

**(Plaintiff Latifah Davis' Claims for Failure
to Provide Informed Consent)**

40.    Plaintiff Latifah Davis repeats and realleges herein all allegations set forth in this complaint

41.    To protect plaintiffs' right to self-determination in matters of medical treatment, defendants Dr. Bergen, Dr. Siems, and/or John Does 1-10 (including employees and agents of AtlantiCare) had duties to evaluate the relevant information and disclose all courses of treatment that are medically reasonable under the circumstances, and to explain, in terms understandable to Ms. Davis, what defendants intended to do before subjecting her to a course of treatment, including for example, the risks, benefits and alternatives to using Cytotec to induce Davis into labor for the delivery of her baby, L.J.

42.    Dr. Bergen, Dr. Siems, and/or John Does 1-10 (including employees and agents of AtlantiCare) failed to adequately explain the true risks, benefits or alternatives to using Cytotec, and also failed to tell Ms. Davis about all medically reasonable alternatives to the course of treatment that defendants recommend.

43.    Specifically, Dr. Bergen, Dr. Siems and/or John Does 1-10 (including employees or agents of AtlantiCare) failed to adequately explain to Ms. Davis that Cytotec was contraindicated for inducing labor, that there was a risk of a torn uterus and a possible hysterectomy if it was administered, and they failed to inform her of true risks and complications related to the use of Cytotec to induce labor.

44.     Dr. Bergen, Dr. Siems, and/or John Does 1-10 (including employees and agents of AtlantiCare) failed to adequately explain the true risks, benefits or alternatives to using Cytotec, thereby breaching his/her duties to provide plaintiffs with informed consent.

45.     If Dr. Bergen, Dr. Siems, and/or John Does 1-10 (including employees and agents of AtlantiCare) had properly explained to Ms. Davis the risks, benefits and alternatives concerning the use of Cytotec, Ms. David (and a reasonable patient) would not have consented to the use of Cytotec, and instead would have consented to alternative course of treatment.

46.     As a direct and proximate result of the breach of informed consent, plaintiff has suffered damages, including a ruptured uterus, a hysterectomy, and the death of baby L.J.

WHEREFORE, Latifah Davis, both individually and as Administratrix of the Estate of Legend Jones, demands judgment against defendants for compensatory and punitive damages, interests, attorneys' fees, costs and such other relief as the Court seems equitable and just.

### **FOURTH COUNT**

**(Plaintiff Latifah Davis' Claims
for Negligence/Malpractice)**

47.     Plaintiff Latifah Davis repeats and realleges herein all allegations set forth in this complaint

48.     Defendants Dr. Bergen, Dr. Siems and/or John Does 1-10 (including employees or agents of AtlantiCare) owed duties of care to plaintiff L.J.

49.     Defendants Dr. Bergen, Dr. Siems and John Does 1-10 (including employees or agents of AtlantiCare) were negligent and failed to exercise the degree of care commonly

exercised by other medical and/or healthcare professionals in like cases having due regard to the existing state of knowledge of medicine.

50.     Defendants Dr. Bergen, Dr. Siems and/or John Does 1-10 (including employees or agents of AtlantiCare) were negligent for, *inter alia*:

     a.  improperly using Cytotec to induce labor;

     b.  negligent risk/benefit assessment of using Cytotec under these circumstances;

     c.  failing to advise or improperly advising plaintiff that it was appropriate to use Cytotec to induce her labor, and/or refusing to offer alternative treatment options; and/or

     d.  failing to properly monitor Davis' vital signs.

51.     As a direct and proximate result of defendants' negligence and malpractice, Ms. Davis experienced great pain, suffering and permanent injury, including but not limited to a ruptured uterus and a hysterectomy, pain and suffering, disability, impairment, loss of enjoyment to life, emotional distress, and suffered economic damages including but not limited to medical bills and expenses, and loss of income.

52.     Plaintiff seeks recovery against Defendants Dr. Bergen, Dr. Siems, AtlantiCare, and John Does 1-10 of all damages.

WHEREFORE, plaintiff Latifah Davis demands judgment against defendants for compensatory and punitive damages, interest, attorney's fees, costs and such other relief as the Court seems equitable and just.

### FIFTH COUNT

**(Plaintiff Latifah Davis'
Claims for Battery)**

53.     Plaintiff Latifah Davis repeats and realleges herein all allegations set forth in this complaint.

54.     On February 16, 2020 at approximately 7:15 a.m., Dr. Bergen, Dr. Siems, and/or John Does 1-10 (including employees or agents of AtlantiCare) physically inserted Cytotec in Ms. Davis.

55.     However, Ms. Davis had specifically requested that Cytotec <u>not</u> be used to induce labor and birth of her son, plaintiff L.J.

56.     Defendants' false statements coerced and deceived Ms. Davis with respect to the risks of Cytotec and the availability of alternatives.

57.     Defendant(s) knew, or should have known, that Davis did not give meaningful, informed consent for him/her to physically contact and insert Cytotec in her vagina.

58.     This intentional physical contact by defendant(s) is offensive and/or was harmful to Ms. Davis.

59.     As a direct and proximate result of this battery, plaintiff has suffered damages, including a torn uterus, a hysterectomy, emotional distress, and the death of baby L.J.

WHEREFORE, Latifah Davis demands judgment against defendants for compensatory and punitive damages, interests, attorneys' fees, costs and such other relief as the Court seems equitable and just.

## SIXTH COUNT

### (Plaintiffs' Claims for Vicarious Liability against AtlantiCare and ABC Corps 1-10)

60.     Plaintiffs repeat and reallege herein all allegations set forth in this complaint.

61.     At all times relevant, defendants Dr. Bergen, Dr. Siems and John Does 1-10 were employees, agents (whether express or apparent), and/or servants of defendant AtlantiCare Regional Medical Center, Mainland Campus and/or ABC Corps. 1-10.

62.     The individual defendants' wrongful acts or omissions were carried out in the course of that employment and/or agency of AtlantiCare and/or ABC Corps. 1-10.

63.     Therefore, defendants AtlantiCare and/or ABC Corps. 1-10 are liable for the negligence, lack of informed consent, and any other wrongful acts or omissions of Dr. Bergen, Dr. Siems, and John Does 1-10 and the pursuant to the doctrines of *respondeat superior*, apparent agency and agency.

WHEREFORE, plaintiffs demand judgment against defendants for compensatory and punitive damages, interest, attorney's fees, costs and such other relief as the Court seems equitable and just.

## **SEVENTH COUNT**

### **(Plaintiffs' Claims of Fraud, and for Punitive Damages, against defendant AtlantiCare)**

64.     Plaintiffs repeat and reallege herein all allegations set forth in this complaint.

65.     AtlantiCare, via its employees and/or agents, made material misrepresentations of a presently existing or past facts.

66.     Defendant misrepresented the true risks and contraindications relating to the off-label use of Cytotec to induce labor, including that the manufacturer stated in 2002 "Dear Doctor" letter and 2015 FDA Alert stating that the drug had not been studied for such off-label use, including for examples, fetal death, uterine hyperstimulation, amniotic fluid embolism, severe vaginal bleeding, fetal bradycardia, severe pelvic pain, and uterine rupture.

67.    Defendants falsely stated that there were no alternative treatments or drugs available to plaintiff other than Cytotec.

68.    AtlantiCare knew and/or believed its statements were false, and that its off-label use of Cytotec was controversial.

69.    AtlantiCare, via its employees and/or agents, misrepresented as true that which is false with the intent to deceive Ms. Davis.

70.    AtlantiCare's motive was to coerce and deceive plaintiff to enlarge its profits at the expense of patient safety, upon information and belief.

71.    Some providers ceased using Cytotec to induce labor after the warnings of the manufacturer and the FDA.  However, others continue to use it to the financial benefit of healthcare providers and facilities – the drug costs less than alternatives and speeds up delivery, allowing hospitals to complete deliveries.

> **Doctors use the drug [Cytotec] because at 25 cents per dose**, it is "**much cheaper**" than other labor-inducing **agents that cost "hundreds of dollars**." Doctors also can induce more labors "than ever before," as evidenced by the doubled induction rate over the last 10 years. Neonatologist Dr. Marsden Wagner said, "Cytotec enables doctors to practice daylight obstetrics. It means that as a doctors, I can come in at 9 a.m., give you the pill, and by 6 p.m. I've delivered a baby and am home having dinner."
>
> * * *
>
> Last August, [Cytotec's manufacturer] Searle sent 200,000 care providers a letter warning that "Cytotec administration by any route is contraindicated in women who are pregnant because it can cause abortion." **At least one-third of the nation's hospitals have restricted Cytotec use in response to the letter**.

*See* Cytotec Off-Label Use to Induce Labor Raises Concern, California Healthline (Dec. 21, 2000) (emph. added).

Dr Peter Husslein, director of the University Clinic for Gynecology in Vienna, said **there are enough options and alternatives of registered drugs** … which are slightly less efficient but carry fewer risks.  "I have always wondered why the German authorities have not simply forbidden the use of Cytotec – there is a justified risk leading to sometimes catastrophic complications affecting young families considering that a brain-damaged child is affecting the whole family for life"….   He said the only reason why … obstetricians use Cytotec is its great efficiency, making it possible to achieve a vaginal delivery even in difficult cases … **and very low costs**.  "In my opinion, this is not justifiable because it comes at a price of a relatively high complication rate," he warned.

*See* Michalopoulos, <u>Dangerous off-label drug use to induce labour raises eyebrows in Europe</u>, EURACTIV (May 13, 2020) (emph. added).

72.     In 2010, the Cochrane Library reiterated its position on the safety of Misoprostol: "Information on women's views is conspicuously lacking…. The studies reviewed were not large enough to exclude the possibility of rare but serious adverse events, particularly uterine rupture, which has been reported anecdotally following misoprostol use in women with and without previous caesarean section.  The authors request information on cases of uterine rupture known to readers"  (Hofmeyr & Gulmezoglu 2003).

73.     Ms. Davis reasonably relied on the misrepresentations of defendant.

74.     Ms. Davis reasonably relied and believed defendant's false statements, and in justifiable reliance on those misrepresentations, plaintiffs suffered damages.

75.     As a direct and proximate result of this fraud, plaintiffs suffered damages, including a torn uterus, a hysterectomy, emotional distress, and the death of plaintiff L.J.

76.     AtantiCare intended patients, especially those sharing Ms. Davis' profile, to rely on its misrepresentations regarding Cytotec and the lack of any alternative, upon information and belief.

77.   Ms. Davis is an African-American women.

78.   She was a recipient of Medicaid, a low-cost health insurance program available to those who meet certain standards for low financial income. Medicaid reimburses healthcare providers at lower rates than commercial health insurance plans.

79.   Upon information and belief, AtlantiCare failed to keep alternative medications besides Cytotec in stock to induce labor, solely to reduce costs and maximize profits at the expense of patient health.

80.   Upon information and belief, AtlantiCare misrepresented to Ms. Davis that alternatives treatments and medications besides Cytotec were unavailable to her because she is an African-American, Medicaid recipient.

81.   AtlantiCare's actions were wanton, willful and with reckless disregard for the health, safety and well-being of Latifah Davis and her baby, L.J.

82.   AtlantiCare put profits ahead of patient safety.

83.   AtlantiCare's callous acts warrant an award of punitive damages.

WHEREFORE, plaintiffs demand judgment against AtlantiCare for compensatory and punitive damages, interests, attorneys' fees, costs and such other relief as the Court seems equitable and just.

## JURY DEMAND

Please take notice that the plaintiffs demand a trial by jury as to all issues in the above matter.

## DESIGNATION OF TRIAL COUNSEL

David A. Mazie, Esq. is hereby designated as trial counsel in the above captioned matter.

## DEMAND FOR MEDICAL SPECIALTY

Pursuant to <u>Rule</u> 4:5-3, provide the exact field of medicine you were practicing at the time of the alleged malpractice, and whether your treatment of the plaintiff involved that specialty.

## DEMAND FOR INSURANCE COVERAGE

In accordance with <u>Rule</u> 4:10-2, defendants are demanded to provide a complete copy of all applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

## DISCOVERY DEMANDS

Plaintiff hereby demands that each defendant serve certified answers to Form C and Form C(3) Interrogatories within thirty (30) days of service of this Complaint.  Plaintiff further demands that each defendant produce complete copies of the following documents within 30 days of service of the Complaint:

    1.    True copies or original of all medical reports or records in the possession of the defendants with regard to any medical condition or illness, at any time, of plaintiff.

    2.    True copies or original of all photographs, videos, charts, or diagrams in the possession of the defendants or under defendants' control regarding any matter relevant to the subject matter of this case.

    3.    True copies or originals of any statements (written, oral or recorded), in the possession or control of the defendants from any party or witness regarding any matter relevant to the subject matter of this case.

    4.    True copies or original of all documents in the possession of the defendants which support any defense or cross-claim being asserted by the defendants in the within litigation.

5.      True copies of any documents which defendants may utilize at trial, either as an exhibit marked for identification, cross-examination or as evidence.

6.      True copies or originals of all contracts or agreements between defendants and any other individuals, entities or other defendants, which touch on or relate to any matter relevant to the subject matter of this case.

7.      Provide original or true copies of each and every learned treatise, article, or any other scholarly or informational matter which defendants may utilize at the trial of this case either for use in defendants' case in chief, on cross-examination, on rebuttal, or at any other stage of the trial of this case.

8.      Provide original or true copy of each and every statement given by plaintiff, at any time, either written or recorded.

9.      Provide original or true copy of any and all discovery material with regard to any accident, injury, or lawsuit involving plaintiff, including but not limited to answers to interrogatories, deposition transcripts, and admissions.

10.     Produce copies of all correspondence between defendants and any anyone else regarding the treatment of plaintiff.

11.     True copies or original of any and all communications between defendants and any other individuals involved in the treatment of the plaintiff.

12.     True copies or original of any communications between defendants and any other entity regarding any matter relevant to the subject matter of this case.

13.     True copies of any documents in defendants' possession with regard to the criminal history of any party, witness, or person with knowledge relevant to this action.

14.     Copies of all reports or documents received from the Central Index Bureau (CIB) with regard to the plaintiff, decedent or defendant.

15.     A transcription of any handwritten office notes or treatment record maintained by defendant.

16.     Copies of all insurance policies (primary and excess) they may provide coverage for the allegations made in this Complaint.

17.     Copies of all pleadings, deposition transcripts, trial transcripts and discovery responses related to any other medical malpractice action where you were a defendant.

18.     The complete electronic records, documents, and information with regard to the plaintiff, or the plaintiff's medical care, regardless of how titled, described, or categorized, including but not limited to, (1) medical records including but not limited to progress notes, nursing records, laboratory testing, and imaging, (2), orders, (3) documentation of who was involved in any way, and when that occurred, (4) financial information, (5) charge sheets, and (6) legal records or notes.   Produce in hard copy and native, electronic format.

19.     True copies of any contracts of employment involving Dr. Blair A. Bergen from January 1, 2010 to present.

20.     True copies of any contracts of employment involving Dr. Nicole M. Siems from January 1, 2010 to present.

21.     Billing records for all Cytotec (misoprostol) usage in patients from January 1, 2010 through present.

22.     Billing records for all medications used to induce labor besides Cytotec (misoprostol) in patient from January 1, 2010.

23.     True copies or original of any and all internal memos, notes, policies and/or procedures regarding the use of Cytotec (misoprostol) for inducing labor.

24.     True copies or originals of any and all notices from the FDA regarding the use of Cytotec from any organization.


**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiff


BY:    _/s/ Adam M. Epstein_____
              ADAM M. EPSTEIN

Dated:  February 11, 2022

## **RULE 4:5-1 CERTIFICATION**

I hereby certify that to the best of my knowledge the matter in controversy is not

the subject of any other action pending in any Court or of a pending arbitration proceeding.

I do not know of any other parties who should be joined in this action at this time.

I hereby certify that the foregoing statements made by me are true.  I am aware that

if the statements made by me are willfully false, I am subject to punishment.


MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiff


BY:___*/s/ Adam M. Epstein*_____
ADAM M. EPSTEIN

Dated:  February 11, 2022

David A. Mazie, Esq. (Attorney ID: 017941986)
Adam M. Epstein, Esq. (Attorney ID: 027482010)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff

| | |
|---|---|
| LATIFAH DAVIS, Individually and as Administratrix of the Estate of LEGEND JONES,<br><br>     Plaintiff,<br><br>vs.<br><br>BLAIR A. BERGEN, M.D.; NICOLE M. SIEMS, D.O.; ATLANTICARE REGIONAL MEDICAL CENTER; JOHN DOES 1-10 (FICTICIOUS PARTIES); ABC CORPS. 1-10 (FICTICIOUS PARTIES), | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ATLANTIC COUNTY<br>DOCKET NO.: ATL-L-<br><br><br>CIVIL ACTION<br><br>**AFFIDAVIT OF MERIT** |

STATE OF NEW JERSEY  )
                    ) SS
COUNTY OF ESSEX     )

     RICHARD L. LUCIANI, M.D., of full age, upon his oath deposes and says:

     1.     I am a medical doctor licensed to practice in the State of New Jersey, and I have been continuously so licensed for over 30 years. I am also Board certified in obstetrics and gynecology, and have been continuously so for more than 25 years. I have practiced medicine continuously for the past 25 years.

     2.     I have reviewed medical records and other documents relating to the treatment of Latifah Davis and her fetus, which records and documents include the medical records from Atlanticare Maternal Fetal Medicine and Atlanticare Regional Medical Center.

3. After reviewing these medical records, it is my opinion that there exists a reasonable probability that the care, skill and/or knowledge exercised by Blair A. Bergen, M.D., Nicole M. Siems, D.O. and Atlanticare Regional Medical Center in their treatment of plaintiff and her fetus (before and during labor and delivery) fell below the standard of care.

4. I have no financial interest in the outcome of this case under review, although I may serve as a paid expert witness in this matter.

I certify that the above statements made by me are true. I am aware that if any of the above statements made by me are willfully false, I am subject to punishment.

RICHARD L. LUCIANI, M.D.

Sworn and subscribed
before me on this 8th
day of February, 2022

_M. Cioffi_
Notary

MARNI B. CIOFFI
Commission # 50017460
Notary Public, State of New Jersey
My Commission Expires
June 10, 2025

**Attached hereto is an Affidavit of Merit. If any Defendant contends that this Affidavit of Merit fails to completely satisfy the requirements of the Affidavit of Merit Statute in any way, demand is hereby made that the Defendant immediately notify the Plaintiffs of any such alleged deficiencies so that same may be corrected if necessary and within the time constraint of N.J.S.A. 2A:53A-26 _et seq._**

# Civil Case Information Statement

## Case Details: ATLANTIC | Civil Part Docket# L-000322-22

**Case Caption:** DAVIS LATIFAH  VS BERGEN, M.D. BLAIR

**Case Initiation Date:** 02/11/2022

**Attorney Name:** ADAM M EPSTEIN

**Firm Name:** MAZIE SLATER KATZ & FREEMAN

**Address:** 103 EISENHOWER PKY

ROSELAND NJ 07068

**Phone:** 9732289898

**Name of Party:** PLAINTIFF : DAVIS, LATIFAH

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** MEDICAL MALPRACTICE

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** YES

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: LATIFAH DAVIS?** NO

**Are sexual abuse claims alleged by: LATIFAH DAVIS?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

02/11/2022
Dated

/s/ ADAM M EPSTEIN
Signed